**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **G&G CLOSED CIRCUIT EVENTS, LLC, as Broadcast Licensee of the April 20, 2013 Saul Alvarez v. Austin Trout Fight Program,** | § § § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § | **EP-15-CV-00111-KC** |
| **1) GCF ENTERPRISES LLC, individually, and d/b/a EL TEXANO and d/b/a EL TEXANO MEXICAN RESTAURANT and d/b/a EL TEXANO RESTAURANT AND CANTINA; and 2) GASTON CARLOS FLORES a/k/a GASTON C. FLORES, individually, and d/b/a EL TEXANO and d/b/a EL TEXANO MEXICAN RESTAURANT and d/b/a EL TEXANO RESTAURANT AND CANTINA,** | § § § § § § § § § § § § § | |
| **Defendants**. | § | |

**ORDER**

On this day, the Court considered Plaintiff's Motion for Final Default Judgment & Brief in Support (the "Motion"), ECF No. 9, in the above-captioned case.  After considering Plaintiff's arguments, the record, and the applicable law, the Court **GRANTS** the Motion in part.

**I.      BACKGROUND**

Plaintiff is a licensing company with the exclusive right to sub-license the closed-circuit telecast of the April 20, 2013, "Saul Alvarez. v. Austin Trout Fight Program," including undercard or preliminary bouts, (collectively "the Event") at closed-circuit locations throughout

Texas.  Pl.'s Original Compl. 3, ECF No. 1; see also Mot. Ex. A-1, at 13, ECF No. 9-1.[1]

Broadcasts of the Event can only be exhibited in a commercial establishment if the establishment

enters into a contractual relationship with Plaintiff.  Compl. 3.

On April 20, 2013, the night of the event, Defendants GCF Enterprises LLC and Gaston

Carlos Flores ("Flores") owned, operated, and supervised El Texano Restaurant and Cantina (the

"Establishment").  *Id.* at 2.  Defendants displayed the Event to patrons in the Establishment

without contracting with Plaintiff, without authorization and without paying the proper licensing

fee.  *Id.* at 4.  Furthermore, Plaintiff alleges that the telecast was transmitted via satellite and was

electronically coded, or "scrambled," so that Defendants had to decode it using electronic

decoding equipment in order to view it clearly.  *Id.* at 3-4; *see also* Mot. Ex. A, at 6-7, ECF No. 9-1.

Plaintiff filed suit on April 16, 2015.  *See generally* Compl.  Plaintiff alleges in the

Complaint that Defendants violated the Federal Communications Act ("FCA"), 47 U.S.C. §§ 553

and 605, by unlawfully and willfully intercepting and publishing the telecast of the Event on

April 20, 2013.  Compl. 3-4.  Plaintiff seeks statutory damages under either 47 U.S.C. §§ 553 and

605.  *Id.* at 5.  Specifically, Plaintiff seeks up to $10,000.00 for Defendants' unauthorized

reception of cable service under 47 U.S.C. § 553(c)(3)(A)(ii), and up to $50,000.00 for

Defendants' allegedly willful, unauthorized reception of cable service under 47 U.S.C. §

553(c)(3)(B).  *Id.*  Further, Plaintiff requests up to $10,000.00 for Defendants' allegedly

unauthorized publication or use of communications pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II),

and up to $100,000.00 for Defendants' allegedly willful and commercially advantageous

publication or use of communications pursuant to 47 U.S.C. § 605(e)(3)(C)(ii).  *Id.*

Plaintiff also seeks an award for full costs and expenses of this action, including

---

[1] In order to assist the reader, the Court cites to the page numbers generated by the Court's
electronic docketing system.

attorneys' fees pursuant to 47 U.S.C. §§ 553(c)(2)(C) and 605(e)(3)(B)(iii), in the amount of one-third of recovery, or alternatively the hourly time presented, along with attorneys' fees for post-trial and appellate services.  *Id.*; *see* Mot. Ex. B, at 35-39, ECF No. 9-1

Finally, Plaintiff seeks a permanent injunction to prevent Defendants from exhibiting any unauthorized or unlicensed programs in violation of the FCA.  Compl. 5.

Defendant GCF was served with the summons in this case on June 2, 2015.  *See* Summons in a Civil Action 2, ECF No. 6.  Defendant Gaston Carlos Flores was also served on June 2, 2015.  *Id.* at 4.  As of the date of this Order, Defendants have not answered or filed a responsive pleading.  Plaintiff now seeks a default judgment pursuant to Federal Rule of Civil Procedure 55.  *See* Mot.; Fed. R. Civ. P. 55.

## II.   DISCUSSION

### A.   Standard

The clerk of the court shall enter default if a party fails to plead or otherwise defend, and the moving party shows that failure by affidavit or otherwise.  Fed. R. Civ. P. 55(a).  After the clerk enters default, a party may move for a default judgment.  *See* Fed. R. Civ. P. 55; *see also N. Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996).  A court enters default judgment only if there is "a sufficient basis in the pleading for the judgment entered."  *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

"The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established."  *Id.*  When reviewing a motion for default judgment, a court takes the plaintiff's well-pleaded factual allegations as true, but not damages.  *United States ex rel. M-CO Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987).

Rule 55(b) gives a court discretion to convene an evidentiary hearing on the issue of damages.  Fed. R. Civ. P. 55(b)(2)(B).  Generally, a court should hold an evidentiary hearing to ascertain the amount of damages.  *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993); *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).  However, a hearing is not necessary if "the amount claimed is a liquidated sum or one capable of mathematical calculation."  *Freeman*, 605 F.2d at 857.

 **B.** **The Federal Communications Act**

By the Complaint, Plaintiff contends that Defendants violated § 553 of the FCA by intercepting the communication of the Event on April 20, 2013.  Compl. 3-5.  Plaintiff further asserts that Defendants published the Event to patrons within Defendants' Establishment, thereby violating § 605 of the FCA.  Mot. 4.; *See* Compl. 5.

Section 553 of the FCA punishes any person who "intercept[s] or receive[s] or assist[s] in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."  47 U.S.C. § 553(a)(1).  Section 605 provides that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person."  *Id.* § 605(a).  Though these statutory provisions seemingly cover the same conduct, § 553 prohibits interception of a communication "offered over a cable system," while § 605 prohibits interception of any "radio communication."  *See id.* §§ 553(a)(1), 605(a).  This distinction is significant, as communicating "by wire" and "by radio" are distinct and separately defined means of transmission.  *See J&J Sports Prods., Inc. v. Mandell Family Ventures, L.L.C.*, 751 F.3d 346, 351-53 (5th Cir. 2014).  Accordingly, "§ 605 deals with communications traveling

through the air (via radio), and § 553 covers communications traveling over cable wire." *Id.* at 352-53 (all alterations removed).

Thus, to recover for a violation under § 605 of the FCA, a plaintiff must prove that a defendant, without authorization, intercepted or otherwise unlawfully appropriated a radio communication and published it to any person. *See* 47 U.S.C. § 605; *Mandell Family*, 751 F.3d at 352-53. To recover for a violation under § 553, however, a plaintiff must show that a defendant, without authorization, intercepted or received communications over a cable system. *See* 47 U.S.C. § 553(a)(1); *Mandell Family*, 751 F.3d at 352-53. Under either section, a plaintiff can request additional fines if it shows that a defendant committed these violations willfully and for purposes of commercial advantage. *See* 47 U.S.C. §§ 553(b)(2), 605(e)(3)(C)(ii).

Defendants' default serves as an admission of well-pleaded facts. *See Nishimatsu Constr. Co.*, 515 F.2d at 1206. Consequently, Defendants' default serves to admit that Plaintiff had the exclusive right to sub-license the Event on April 20, 2013. Compl. 3. Defendants, by their default, also admit that they intercepted and published the Event without authorization, and that they acted willfully and for purposes of commercial advantage. *Id.* at 4; *see* 47 U.S.C. §§ 553(b)(2), 605(e)(3)(C)(ii). Defendants additionally admit that the Event was communicated via an interstate satellite transmission. Compl. 3; Mot. 4.

Further, Plaintiff's evidence establishes that Defendants sold beverages and/or food during the Event and charged an entrance fee for direct commercial advantage. Mot. Ex. A, at 8; Mot. Ex. A-2, at 16, 24, ECF No. 9-1; *see J & J Sports Prods., Inc. v. Palma*, Civil Action No. 3:11-CV-01776-L, 2012 WL 1853519, at *1 (N.D. Tex. May 21, 2012) (accepting both the facts in the complaint and evidence supporting the plaintiff's motion for default judgment as true); *Santana v. First Am. Solutions, LLC*, No. EP-11-cv-186-PRM, 2011 WL 3666591, at *1 (W.D. Tex. June

27, 2011) (stating a court has the discretion to rely on evidence to determine whether or not to grant a default judgment).  In sum, the undisputed facts and evidence provide a sufficient basis to hold that Defendants unlawfully intercepted and published without authorization an interstate satellite transmission.  The radio communications protected under § 605 include transmissions by satellite.  *DirectTV, Inc. v. Seijas*, 508 F.3d 123, 125 (3rd Cir. 2007); *DirectTV, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2006).  The Court therefore finds that Defendants violated § 605 of the FCA.  *See Nishimatsu*, 515 F.2d at 1206 ("There must be a sufficient basis in the pleadings for the judgment entered.").  Plaintiff has not, however, pleaded sufficient facts to show that Defendants intercepted or received communications over a cable system as required for liability under § 553.[2]  *See* 47 U.S.C. § 553(a)(1); *Mandell Family*, 751 F.3d at 352-53.  Therefore, the Court grants Plaintiff's request for default judgment against Defendants under § 605 of the FCA only.

### C.    Plaintiff's Requested Damages

Having determined that Defendants violated § 605 of the FCA, the only remaining question is the appropriate amount of damages.  The Court finds that a hearing is unnecessary on the issue of damages because they are capable of mathematical calculation from Plaintiff's exhibits and affidavits.  *See Freeman*, 605 F.2d at 857.  Moreover, the amount of attorneys' fees and costs is likewise calculable from Plaintiff's attorney's affidavit.  *See id.*

When a plaintiff meets the burdens of proving violations of § 605, a plaintiff may choose to collect either actual or statutory damages.  47 U.S.C. § 605(e)(3)(C)(i).  For violations of § 605, a plaintiff can collect a statutory amount ranging from $1,000 to $10,000.  *Id.* § 605(e)(3)(C)(i)(II).  A court uses its discretion to determine the specific amount that a plaintiff recovers.  *Id.*  A court also has discretion to increase these statutory damages by an amount not

---

[2] The Court notes that while the Complaint seeks damages under both § 553 and § 605, Plaintiff's Motion only seeks a default judgment under § 605.  *Compare* Compl. 5, *with* Mot. 4.

more than $100,000 for each unauthorized communications violation if it "finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." *Id.* § 605(e)(3)(C)(ii). A prevailing plaintiff can also recover full costs, including reasonable attorneys' fees. *Id.* § 605(e)(3)(B)(iii).

Here, Plaintiff's Complaint seeks the maximum amount of $10,000 in statutory damages under § 605. Compl. 4. For willful and commercially advantageous damages, the Complaint also seeks the maximum amount of $100,000. *Id.* Plaintiff further requests a permanent injunction enjoining Defendants from "any future exhibition of unauthorized or unlicensed programs and any violation of 47 U.S.C. §§ 553 or 605." *Id.* at 5. Finally, the Complaint asks for full costs and expenses, including reasonable attorneys' fees. *Id.*

### 1.      Statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II)

As noted above, Plaintiff seeks $10,000.00 in statutory damages under § 605(e)(3)(C)(i)(II). *Id.* at 4; Mot. 5. "[C]ourts have developed two approaches for determining statutory damages under this provision." *Joe Hand Promotions, Inc. v. Garcia*, 546 F. Supp. 2d 383, 386 (W.D. Tex. 2008). "The first is to award damages based on the number of patrons in the establishment at the time of the violation, and the second is to award a flat sum for damages." *Id.* To calculate a damage amount under the first approach, a court normally trebles the broadcasting fee to account for "money saved by not complying with the law, as well as any profits made from food and drink sales associated with customers who stayed and watched the fight." *Id.*

Plaintiff's evidence shows that its licensing fee for the Event was based on the venue's seating capacity. Mot. Ex. A, at 7; Mot. Ex. A-3, at 31, ECF No. 9-1. Here, the seating capacity of the venue is 150 patrons, with approximately as many as 127 patrons present on the evening

of the Event.  Mot. 5; Mot. Ex. A-2, at 17, 25.  Venues which seat between 101 to 200 patrons were required to pay a licensing fee of $1,200.00 show the Event.  Mot. Ex. A-3, at 31.  Thus, the Court finds that Plaintiff is entitled to *at least* $1,200.00 in statutory damages.  *See Garcia*, 546 F. Supp. 2d at 386.

As in *Garcia*, where the defendants sold food and drink to approximately 65-80 people during the illegally obtained telecast, *see id.*, here, Defendants sold beverages and charged an entry fee to a sizeable number of patrons during the Event, as many as 127 at one point in the evening.  *See* Mot. Ex. A-2, at 16-17, 24-25.  Accordingly, the Court finds that trebling the licensing fee to account for "profits made from food and drink sales associated with customers who stayed and watched the fight," as well as for profits from the entry fee, is appropriate in the instant case.  *See Garcia*, 546 F. Supp. 2d at 386.  Therefore, the Court finds that a total award of $3,600 reflects Plaintiff's statutory damages under § 605(e)(3)(C)(i)(II).  *See* 47 U.S.C. § 605(e)(3)(C)(i)(II) (noting that a party may collect a sum between $1,000 and $10,000 for each violation "as the court considers just").

### 2. Willfulness damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii)

Plaintiff also requests $100,000.00 in additional damages under § 605(e)(3)(C)(ii) because Defendants' conduct was committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain."  Mot. 5; 47 U.S.C. § 605(e)(3)(C)(ii).  Defendants have admitted Plaintiff's allegation of willful and commercially advantageous conduct by her default.  *See* Mot. 7-8; *Nishimatsu Constr. Co.*, 515 F.2d at 1206.  Further, Plaintiff's evidence supports the finding that Defendants' actions were willful.  It is highly unlikely that Defendants accidentally intercepted the transmission of the Event, since the transmission was electronically coded.  *See* Compl. 3-4.  After all, "signals do not descramble spontaneously, nor do television

sets connect themselves to cable distribution systems." *Garcia*, 546 F. Supp. 2d at 385 (citing *Time Warner Cable of N.Y.C. v. Googies Luncheonette, Inc.*, 77 F. Supp.2d 485, 490 (S.D.N.Y. 1999)).  Thus, Defendants likely intended to intercept and display the transmission.

Plaintiff's evidence also supports its allegation that Defendants' actions were for purposes of direct or indirect commercial advantage.  The evidence indicates that Defendants' Establishment displayed the Event on four televisions, and projected it on two  seventy-two inch screens. *See* Mot. Ex. A-2, at 16, 24; *Joe Hand Promotions, Inc. v. Alima*, Civil Action No. 3:13-CV-0889-B, 2014 WL 1632158, at *5 (N.D. Tex. Apr. 22, 2014) (considering number and size of televisions as evidence of willfulness).  In addition, Plaintiff's evidence establishes that Defendants sold food and drinks during the Event. *See* Mot. 5; Mot Ex. A-2, at 16.  Vending food and/or beverages is evidence of commercial advantage.  *See*, *e.g.*, *J&J Sports Productions, Inc. v. Cotorra Cocina Mexicana & Bar LLC*, 2012 WL 1098446, at *3 (S.D. Miss. Mar. 30, 2012).  Defendants also charged an entrance fee, an obvious indicator of commercial activity.  *See Kingvision Pay-Per-View, Ltd. v. Zalazar*, 653 F.Supp.2d 335, 342 (S.D.N.Y. 2009).

In light of these admissions and evidence, the Court finds that Defendants committed FCA violations "willfully and for purposes of direct or indirect commercial advantage or private financial gain."  47 U.S.C. § 605(e)(3)(C)(ii).  Therefore, Plaintiff deserves an enhanced award.

However, the Court finds that Plaintiff's requested damages of $100,000.00 are clearly excessive under the circumstances of this case.  In selecting the appropriate amount of enhanced damages to be applied for willfulness, the Court is mindful that the purpose of these damages is to discourage would-be pirates, including Defendant, from engaging in piracy in the future.  *See Garcia*, 546 F. Supp. 2d at 386.  However, the Court also recognizes that the purpose of these damages is not to drive Defendants out of business.  *See id*.  Considering the number of people in

attendance, the collection of the entrance fee, the number of televisions and screens, as well as the sale of beverages, the Court finds that an award of $7,200.00 suffices in deterring Defendants from violating the FCA again, while taking into account Defendants' willful and commercially advantageous actions.  *See id*.

### 3.   Attorneys' fees

Plaintiff requests attorneys' fees amounting to one-third of the actual and additional damages awarded to Plaintiff for the prosecution of this FCA violation.  *See* Mot. 11; Mot. Ex. B, at 33-39.  Alternatively, Plaintiff requests the hourly rate for prosecution of the case.  Mot. 10; Mot. Ex. B, at 36-38.  Under § 605(e)(3)(B)(iii), a court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails."  47 U.S.C. § 605(e)(3)(B)(iii).  The Court finds that fees are warranted in this case, but finds that one-third of the actual and additional damages that Plaintiff requests is excessive.  *See Garcia*, 546 F. Supp. 2d at 386 (expressing that attorneys' fees must be reasonable to be granted).  Under this calculation, the attorneys' fees would amount to $3,600.00, one-third of the $10,800.00 combined statutory and enhanced damages award.  Instead, the Court calculates the fee award using the lodestar method with the attorney's hourly rate of $250.00.  *See* Mot. Ex. B, at 36-37. Because Plaintiff's evidence shows that its attorney spent four hours working on this matter, the Court awards $1,000.00 in attorneys' fees.  *See id*.

### 4.   Injunctive relief

Finally, Plaintiff requests a permanent injunction under § 605(e)(3)(B)(i).  Compl. 5; Mot. 11.  Under this section, the Court has the authority to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain violations" of unauthorized publication or use of radio communications.  47 U.S.C. § 605(e)(3)(B)(i).  An injunction is an

extraordinary remedy that should only be granted if Plaintiff suffered an irreparable injury and the legal remedies available are inadequate. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). An irreparable injury is defined as one which "cannot be undone through monetary remedies." *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981).

District courts within the Fifth Circuit often grant requests for permanent injunctions in this type of case, holding such "relief to be reasonable." *See KingVision Pay-Per-View, Ltd. v. Guerra*, Civil Action No. H-07-1822, 2007 WL 3001659, at *2 (S.D. Tex. Oct. 12, 2007); *see also J & J Sports Prods., Inc. v. Flores*, Civil Action No. H-09-2220, 2009 WL 4801520, at *2 (S.D. Tex. Dec. 11, 2009). Further, district courts outside the Fifth Circuit have found that monetary damages alone are inadequate to prevent future piracy. *See Dish Network L.L.C. v. Rounds*, Civil Action No. 11-241 Erie, 2012 WL 1158798, at *5 (W.D. Pa. Apr. 6, 2012) (citing *DISH Network L.L.C. v. DelVecchio*, No. 11-CV-06297-CJS, 2011 WL 4747848, at *6 (W.D.N.Y. Oct. 7, 2011)). These courts reason that permanent injunctions would pose a minimal burden on defendants, since the injunction's only function "would be to prevent [defendants] from engaging in further illegal activity." *DelVecchio*, 2011 WL 4747848, at *6. However, a district court in the Eastern District of New York denied a request for a permanent injunction when a plaintiff failed to affirmatively demonstrate that it was entitled to injunctive relief. *J & J Sports Prods. Inc. v. Lopez*, No. 05-CV-5799 (JG) (RER), 2006 WL 2355851, at *5 (E.D.N.Y. June 8, 2006), *adopted by* No. 05-CV-5799 JG, 2006 WL 2375494 (Aug. 14, 2006). That court reasoned that, without evidence showing irreparable harm or that statutory and enhanced damages under § 605 were insufficient to deter future violations of the FCA, a plaintiff could not satisfy the conditions for issuing a permanent injunction. *Id.*

This Court agrees with the reasoning in *Lopez*. The Court finds it difficult to believe that

an award of $10,800.00 in damages is insufficient to make Plaintiff whole.  *See Fed. Deposit Ins. Co. v. Faulkner*, 991 F.2d 262, 265 (5th Cir. 1993) (stating that "the availability of a legal remedy often indicates that an applicant's injury is not irreparable").  Additionally, Plaintiff has presented no evidence that it cannot be made whole by the Court's damages award.  *See Lopez*, 2006 WL 2355851, at *5.

Further, the Court finds that the reasoning in *DelVecchio* counsels against issuing a permanent injunction, rather than supports issuing a permanent injunction.  If a permanent injunction's only function "would be to prevent [defendants] from engaging in further illegal activity," then an injunction would be redundant, as the FCA already prohibits such illegal activity.  *See DelVecchio*, 2011 WL 4747848, at *6.  The Court refuses to issue an injunction on the presumption that § 605 of the FCA is insufficient to deter illegal conduct and must be supplemented by a permanent injunction.  There are no unusual facts in this case that would warrant such an extraordinary remedy.  Accordingly, the Court denies Plaintiff's request for a permanent injunction.

## III.    CONCLUSION

For the foregoing reasons, the Court enters the following orders:

It is hereby **ORDERED** that Plaintiff's Motion, ECF No. 9, is **GRANTED** in part.

**IT IS  FURTHER ORDERED** that default judgment is **ENTERED** against Gaston Carlos Flores, individually, and d/b/a El Texano and d/b/a El Texano Restaurant and d/b/a El Texano Restaurant and Cantina as well as GCF Enterprises LLC, individually, and d/b/a El Texano and d/b/a E; Texano Restaurant and d/b/a El Texano Restaurant and Cantina.

**IT IS FURTHER ORDERED** that Defendants **SHALL PAY** G&G Closed Circuit Events, LLC:

1. **$3,600.00** in statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II);

2. **$7,200.00** in enhanced damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii); and

3. **$1,000.00** in attorneys' fees pursuant to 47 U.S.C. § 605(e)(3)(B)(iii).

4. In total, the court **GRANTS** default judgment in favor G&G Closed Circuit

   Events, LLC. in the amount of **$11,800.00**.

   **IT IS FURTHER ORDERED** that Defendants **SHALL PAY** post-judgment interest at

the rate of 0.50%, until paid in full, to be compounded annually pursuant to the provisions of 28

U.S.C. § 1961(b).

   **IT IS FURTHER ORDERED** that the Clerk **SHALL** close the case.

   **SO ORDERED.**

   **SIGNED this 19th day of November, 2015.**

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE